IN THE SUPREME COURT OF THE STATE OF DELAWARE

SHELBY DAVIS,[1]

    Respondent Below,
    Appellant,

    v.

DEPARTMENT OF SERVICES
FOR CHILDREN, YOUTH AND
THEIR FAMILIES,

    Petitioner Below,
    Appellee.

§
§ No. 307, 2025
§
§ Court Below–Family Court
§ of the State of Delaware
§
§ File Nos. CK21-03098
§        25-01-1TK
§
§
§ Petition Nos. 24-12842
§        25-00937
§
§
§

Submitted: November 12, 2025
Decided:   December 11, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the no-merit brief and the motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the record on appeal, it appears to the Court that:

(1) By order dated June 18, 2025, the Family Court terminated the parental rights of the appellant, Shelby Davis ("Mother"), with respect to her daughter born in June 2024 (the "Child"). This appeal followed. The Family Court's order also

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

terminated the parental rights of the Child's father ("Father"), who filed a separate appeal.[2]

(2) On appeal, Mother's counsel filed an opening brief and a motion to withdraw under Rule 26.1(c). Counsel asserts that she conducted a conscientious review of the record and the relevant law and determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of the motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother submitted points for the Court's consideration. The Delaware Department of Services for Children, Youth and Their Families, Division of Family Services ("DFS") and the Child's attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In June 2024, DFS petitioned for emergency custody of the Child because Mother testified positive for THC when the Child was born, she had an extensive history with child welfare services in Colorado and Delaware, she had mental health issues and a history of substance abuse, and her housing was unsuitable for children. The Family Court granted the petition.

---

[2] *Schnell v. Dep't of Servs. for Children, Youth, & Their Fams.*, No. 306, 2025 (Del.).

(4) With the filing of DFS's dependency-and-neglect petition, the mandated hearings ensued.[3] At the preliminary protective hearing, Mother stipulated that the Child was dependent and that it was in the Child's best interests to be in DFS custody. The court also found that there was probable cause to believe that the Child was at risk of physical, mental, or emotional danger and that DFS had made reasonable efforts to prevent the unnecessary removal of the Child from the parents' home.

(5) In July 2024, DFS moved under 13 *Del. C.* § 1103(a)(7) and (d) to be excused from case planning and to change the permanency plan to termination of parental rights ("TPR") based on prior involuntary terminations of the parents' parental rights to two of their other children. In the dispositional hearing order, the Family Court stated that it would rule on DFS's motion after the first review hearing. The Family Court also found that the Child was doing well in foster care. The parents had visited the Child twice but failed to focus on the Child during one of those visits. The Family Court approved a case plan requiring Mother to maintain adequate housing and financial stability, engage in mental health services, take parenting classes, complete domestic violence and substance abuse evaluations and follow any recommendations, and resolve child welfare cases in Colorado.

---

[3] When DFS obtains custody of a child, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

(6)    On November 19, 2024, the Family Court held a review/permanency hearing. Of twelve scheduled visits with the Child since August 20, 2024, Mother failed to confirm or appear for three visits and ended one thirty-minute visit after thirteen minutes. A DFS employee testified that she performed a home assessment in June and observed the presence of animal feces, black mold on the walls, and many exposed wires in the parents' mobile home. Father would not grant DFS access to the home in August. Mother was seeing a therapist for her mental health issues but was unemployed. Substance abuse and domestic violence issues remained unaddressed. The Family Court granted DFS's motion to be excused from case planning and to change the goal to termination of parental rights.

(7)    On January 17, 2025, DFS filed a TPR petition based on Mother's failure to plan for the Child's physical needs and emotional development[4] and the involuntary termination of her parental rights for another child.[5] At the February 3, 2025 post permanency review hearing, a Delaware State police officer testified about his recent visit to the parents' home after Father reported that Mother was making suicidal threats. Mother was uncooperative during the incident, arrested for resisting arrest, and taken to the hospital after appearing to suffer a seizure. She left the hospital after twenty-four hours. The police officer also testified that the home was

---

[4] 13 *Del. C.* § 1103(a)(5).
[5] 13 *Del. C.* § 1103(a)(7).

4

full of garbage and very dirty. Of six scheduled visits with the Child since November 26, 2024, Mother failed to confirm or appear for two visits. Mother was also fifteen minutes late for one visit. Mother occasionally worked for a restaurant and was appealing the denial of her application for Supplemental Security Income. She continued to see a therapist.

(8) The Family Court held a TPR hearing on May 19, 2025. The court took judicial notice of the previous orders in the matter, its termination of Mother's parental rights to child born in 2022, and a Colorado court's termination of Mother's parental rights to a child born in 2019. The court also heard the testimony of maternal grandmother, Father, Mother, the DFS permanency worker, one of the Child's foster parents, and the Child's court-appointed special advocate ("CASA").

(9) The maternal grandmother testified about how four of Mother's other children came into her custody. Father testified that he and Mother hoped to sell their mobile home and move into a house. He also testified about the events leading to the child welfare proceedings for their other children in Colorado and Delaware.

(10) Mother testified about her use of marijuana to alleviate her seizure disorder. Mother had also been diagnosed with borderline personality disorder, depression, and anxiety. She was taking medications for those conditions and seeing a therapist. As to the mobile home, she testified that the wiring was fixed and that they were working on the mold. Mother had received some substance abuse

5

treatment, but claimed she was told that she did not have to continue it. She was unemployed, and reapplying for Supplemental Security Income.

(11) The permanency worker testified that Mother told her the mobile home remained the same, but the yard had been cleaned up and only three of seven dogs remained. Mother was reapplying for Supplemental Security Income. DFS had not received any proof or documentation that Mother was seeing a therapist. There was also no indication whether Mother had completed a parenting class. Mother did not believe a domestic violence survivor assessment was necessary.

(12) The permanency worker had not observed any bonding between Mother and the Child during visits. The Child was doing well in foster care and had bonded with her foster parents, who wished to adopt her. The Child's CASA supported TPR so that the foster parents could adopt the Child. Following the hearing, the Family Court issued a written decision terminating Mother's parental rights.

(13) In this appeal from the Family Court's TPR decision, the Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently

---

[6] *Wilson v. Div. of Fam. Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[7] *Id*. at 440.

supported by the record and are not clearly wrong.[8]  If the trial judge has correctly applied the law, then our standard of review is limited to abuse of discretion.[9]

(14)  The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[10]  First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11]  Second, if the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's best interest.[12]  Both of these requirements must be established by clear and convincing evidence.[13]

(15)  Here, the Family Court found that DFS proved by clear and convincing evidence that termination of Mother's parental rights was appropriate because she had failed to plan for the Child's needs and the Child had been in custody for more than six months.[14]  The Child had never lived with Mother, who had no financial resources and unsafe housing.  Mother missed multiple visits with the Child and failed to address her mental health issues sufficiently.  The court also determined that DFS had made reasonable efforts to reunify the family.

---

[8] *Id.*
[9] *Id.*
[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[11] *Id.* at 537.
[12] *Id.*
[13] *Powell v. Dep't of Servs. for Children, Youth and Their Fams.*, 963 A.2d 724, 731 (Del. 2008).
[14] 13 *Del. C.* § 1103(a)(5)(b).

(16)   Applying the best interest factors,[15] the court found that factors three (the Child's relationship with her parents and relatives), four (the Child's adjustment to home, school, and the community), five (the mental and physical of all individuals involved), and six (the parents' past and presence compliance with their rights and responsibilities to the child) weighed in favor of granting the TPR petition. The court found these factors outweighed factor one (the parents' wishes), which weighed in favor of denying the petition, and factors two (the Child's wishes), seven (evidence of domestic violence), and eight (the parties' criminal histories), which were neutral. The court concluded that termination of the Mother's parental rights was in the Child's best interests.

(17)   In her points submitted for the Court's consideration, Mother contends that she was treated unfairly because she has a learning disability. She states that Colorado child welfare workers had to work with her after a court found that they had not complied with the Americans with Disability Act ("ADA"). Mother appears to be relying on a case in which a Colorado Court of Appeals reversed the termination of her parental rights for one child because the child welfare agency

---

[15] *Id.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and termination "appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

failed to establish that it had made reasonable accommodations for her learning disability when devising her treatment plan.[16]

(18) Mother did not invoke the ADA below, and the record is devoid of evidence that she had a learning disability requiring DFS to make reasonable accommodations in preparing her case plan. In addition, DFS was excused from case planning because Mother's parental rights to two other children were previously terminated. Those cases were not reversed.[17] Although the Family Court terminated Mother's parental rights based on her failure to plan under § 1103(a)(5), there was also clear and convincing evidence to support termination of Mother's parental rights based on the previous TPRs under § 1103(a)(7).

(19) Having carefully reviewed the parties' positions and the record on appeal, we hold that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a

---

[16] *People in Interest of S.S.,* 2023 WL 12058523 (Colo. App. Mar. 30, 2023) (reversing the district court's termination of Mother's parental rights to a child born in 2020 and remanding the case for adoption of a treatment plan providing reasonable accommodations for Mother's learning disability).

[17] *Davis v. Dep't of Servs. for Children, Youth, and Their Fams./Div. of Fam. Servs.*, 338 A.3d 1291, 2025 WL 315097 (Del. Jan. 28, 2025) (affirming the Family Court's termination of Mother's parental rights to a child born in 2022); *People in Interest of M.S.*, Case No. 19JV624, Order (Colo. D. Ct. Oct. 11, 2021) (terminating Mother's parental rights to a child born in 2019).

conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Chief Justice